Filed 9/20/13; pub. order 10/11/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THOMAS WILLIAM SELF et al., | D061181 |
| Plaintiffs, Cross-defendants and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00101291-CU-OR-CTL) |
| SHAHRAM SHARAFI et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Reversed with directions.


Dillon & Gerardi, Timothy P. Dillon and Sunjina Ahuja for Defendants, Cross-complainants and Appellants.

Boudreau Williams and Jon R. Williams for Plaintiffs, Cross-defendants and Respondents.

Defendants and cross-complainants Shahram Sharafi and Fatemeh Falahat-Pisheh (the Sharafis)[1] appeal from a judgment entered after the trial court granted summary judgment in favor of plaintiffs and cross-defendants Thomas William Self and Linda P. Self as co-trustees of the Thomas William Self and Linda P. Self Family Trust, executed May 10, 1995 (the Selfs) on the Selfs' first amended complaint for quiet title and declaratory relief and the Sharafis' cross-complaint for declaratory relief.

The first amended complaint and cross-complaint concern adjoining parcels of real property owned by the Selfs and the Sharafis, respectively. In granting the Selfs' motion for summary judgment, the court ruled that a building restriction contained in a 1946 deed, by which the prior common owner of the adjoining parcels conveyed the parcel the Sharafis now own and retained the parcel the Selfs now own, was a personal covenant that is not enforceable against the Selfs. The Sharafis contend the building restriction is enforceable as a covenant running with the land and as an equitable servitude. We conclude the building restriction is enforceable as a covenant running with the land under Civil Code[2] section 1462 and, accordingly, reverse with directions to enter judgment in favor of the Sharafis.

---

[1]    Defendants refer to themselves collectively as the Sharafis in their appellate briefs.

[2]    Unless otherwise indicated, all further statutory references are to the Civil Code.

2

I

FACTUAL AND PROCEDURAL BACKGROUND

In 1945 Elizabeth Fleet purchased a parcel of real property described as "Lot 4 in Block 'I' of the Resubdivision of a portion of Villa Tract, La Jolla Park, in the City of San Diego." In November 1946, Fleet conveyed a portion of Lot 4 to Jay M. and Nita Donovan by a grant deed, which provided that she was conveying "[a]ll of Lot 4 EXCEPTING the following described property in Block 'I' . . . :" The deed then set forth the legal description of the portion of Lot 4 that Fleet retained.[3] Under the heading "Restriction[,]" the deed stated: "A consideration of this sale is that no buildings will be erected now or at any future date on the [property retained]."

In 1989, the Selfs purchased from successors in interest of Fleet the portion of Lot 4 that Fleet retained as well as some adjacent property. Although the grant deed conveying the Lot 4 property to the Selfs does not refer to the building restriction, the Selfs were made aware of the restriction *before* they purchased the property.[4] The Selfs

_____

[3] The 1946 grant deed sets forth the legal description of the retained portion as follows: "Beginning at the most Northerly corner of Lot 4, being also the Southerly line of Pepita Way: thence South 41° 19' West along the Northerly line of Lot 4, a distance of 60 feet to the Northwest corner of Lot 4; thence South 38° 32' East along the Westerly line of Lot 4 to the most Westerly prolongation of a line that would be the Southerly line of Lot 7; thence Easterly to the Easterly line of Lot 4 and also the most Southwesterly corner of said Lot 7 in said Block 'I'; thence North 30° 54' West, a distance of 118.42 feet to the most Northerly corner of Lot 4."

[4] The building restriction was specifically noted in the sellers' Real Estate Transfer Disclosure Statement, which the Selfs signed to acknowledge their receipt of a copy of that document about a month before they completed the purchase of the property.

later transferred the property to their family trust. In October 2010, the Sharafis obtained title to the portion of Lot 4 that Fleet sold to the Donovans, and an adjoining lot.

In January 2011, the Selfs filed a verified first amended complaint against the Sharafis for quiet title and declaratory relief, seeking an adjudication that they held title to their Lot 4 property free of the building restriction contained in the 1946 grant deed and that the building restriction is invalid and unenforceable. In March 2011, the Sharafis filed a cross-complaint for declaratory relief, seeking an adjudication that the building restriction is "binding, valid and enforceable against the Self's [*sic*] as the owners of the Restricted Property and as against all subsequent owners of the Restricted Property."

The Selfs and the Sharafis both filed motions for summary judgment. The Selfs argued in their motion that, as a matter of law, the building restriction is not enforceable as a covenant running with the land or as an equitable servitude. The Sharafis argued the building restriction is enforceable as a covenant running with the land under two different statutes that define such covenants — section 1462 and former section 1468. They additionally argued that the building restriction is enforceable as an equitable servitude, and as a negative easement. The court granted the Selfs' motion and entered judgment in favor of the Selfs and against the Sharafis, ruling the building restriction is not a covenant running with the land, an equitable servitude, or a negative easement.

4

II

DISCUSSION

Because the material facts are undisputed, the legal significance of those facts presents a question of law, which we review de novo. (*Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764, 774; *Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 707.)

A. *Statutory Scheme for Covenants Running with the Land*

Section 1460 provides: "Certain covenants, contained in grants of estates in real property, are appurtenant to such estates, and pass with them, so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them. Such covenants are said to run with the land." Section 1461 provides: "The only covenants which run with the land are those specified in this Title, and those which are incidental thereto." A covenant can run with the land under either section 1462 or section 1468. (*Monterey/Santa Cruz County Bldg. etc. Trades Council v. Cypress Marina Heights LP* (2011) 191 Cal.App.4th 1500, 1517.) To run with the land, a covenant must touch and concern land, which means it must affect the parties as owners of the particular estates in land or relate to the use of land. (*Anthony v. Brea Glenbrook Club* (1976) 58 Cal.App.3d 506, 510 (*Anthony*).) "The primary characteristic of a covenant running with the land is that both liability upon it and enforceability of it pass with the transfer of the estate. The benefits or burdens pass by implication of law rather than under principles of contract." (*Ibid.*)

B. *The Building Restriction Is Not a Covenant Running with the Land Under Section 1468*

The former version of section 1468 that was effective in 1946 provided: "A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, and which is made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with both of such parcels of land." (Stats. 1905, ch. 450, § 1, p. 610.) The Legislature amended section 1468 in 1968 and 1969 to make covenants that run with the land analytically closer to equitable servitudes and to make the statute applicable to covenants between a grantor and grantee, as well as between separate landowners. (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 354 (*Citizens*).) However, those amendments "have been held to apply only to covenants postdating their enactment." (*Ibid.*) Accordingly, our determination of whether the building restriction at issue in this case is a covenant running with the land under section 1468 is governed by the former version of section 1468 in effect in 1946.

We conclude that the building restriction is not a covenant running with the land under the former version of section 1468 because that statute "only applied to a covenant 'made by the owner of land with the owner of other land,' and not to a covenant between a grantor and a grantee." (*Citizens*, *supra*, 12 Cal.4th at p. 353; *Marra v. Aetna Construction Co.* (1940) 15 Cal.2d 375, 377-378 (*Marra*).) Although Fleet and the Donovans were adjoining landowners before Fleet severed Lot 4 and conveyed a portion of it to the Donovans, the subject building restriction is contained in the grant deed by

6

which Fleet made that conveyance. The building restriction was not a covenant concerning other parcels that Fleet and the Donovans owned before or after that conveyance. Because the covenant at issue in this case is contained in a grant of real property and predates the amendments to the original version of section 1468, it is governed *exclusively* by section 1462. (*Marra*, at p. 377 ["Covenants . . . contained in a grant in fee of real property, are governed solely by section 1462 . . . ."].)

C.      *The Building Restriction Is a Covenant Running with the Land Under Section 1462*

Section 1462 provides: "Every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land." "The decisions have interpreted [section 1462] to mean that a burdensome covenant contained in a deed which in no way benefits the property conveyed is not binding at law upon the transferees of the grantee." (*Marra*, *supra*, 15 Cal.2d at p. 378.) Conversely, when a covenant benefits, and does not burden, the property conveyed, it runs with the land under section 1462 and is binding on transferees of the grantee. (*Citizens*, *supra*, 12 Cal.4th at pp. 353, 368.) Whether a covenant in a grant of real property benefits the conveyed property so as to run with the land under section 1462 is determined in light of the conditions existing at the time of the grant. (*Robertson v. Nichols* (1949) 92 Cal.App.2d 201, 205.) The fact that the covenant does not mention "assigns" is immaterial; the question must be determined from the nature of the covenant itself. (*Sacramento Suburban Fruit Lands Co. v. Whaley* (1920) 50 Cal.App. 125, 133 (*Sacramento Suburban Fruit*).)

The general test for determining whether a covenant runs with the land under section 1462 is whether the covenant "is 'made for the direct benefit of the property.' The phrase 'made for the direct benefit of the property' means, among other things, 'any covenant which affects the title to real property or any interest or estate therein of the covenantee. . . . [I]f the covenant is one which concerns the land itself, or in any manner or measure affects its title or any interest therein, then it is, within the meaning of . . . section 1462, "made for the direct benefit of the real property" to which it relates.'" (*Carlson v. Lindauer* (1953) 119 Cal.App.2d 292, 304-305.) The meaning of the phrase "direct benefit to the property" is not restricted to physical benefit that directly accrues to the land from the covenant. (*Richardson v. Callahan* (1931) 213 Cal. 683, 689; *Sacramento Suburban Fruit*, *supra*, 50 Cal.App. at p. 130.) Courts interpreting section 1462 "'have uniformly adopted the view that if the covenant tends to enhance or increase the value of the land, it is a direct benefit within the meaning of the [statute] and therefore runs with the land.'" (*Anthony*, *supra*, 53 Cal.App.3d at p. 511.)

The building restriction in the present case touches and concerns the land because it relates to the use of the restricted land. (*Anthony*, *supra*, 58 Cal.App.3d at p. 510.) The restriction directly benefits the Sharafis' property that Fleet conveyed to the Donovans in 1946 because it is the type of restriction that naturally enhances the market value of any property adjoining the restricted property. (*Mock v. Shulman* (1964) 226 Cal.App.2d 263, 266 [restriction imposed against all lots in a tract against growing any hedge over six feet in height within 15 feet of boundary line of adjoining lot was for the mutual benefit of the entire tract and the owners of the separate lots therein]; *Whitinsville Plaza, Inc. v.*

8

*Kotseas* (Mass. 1979) 390 N.E.2d 243, 247 [the purpose of all building restrictions is to enhance the market value of the promisee's land].)

The Selfs argue that the building restriction is not a covenant running with the land under section 1462 because it burdens their portion of Lot 4, citing the rule that "[u]nder section 1462, a [covenant] that *benefits* the property may run with the land, but not one that *burdens* the property." (*Citizens*, *supra*, 12 Cal.4th at p. 353.) However, "the property" referenced in the *Citizens* court's articulation of the rule is the property *conveyed* by the grant containing the covenant, *not property retained by the grantor*. Section 1462 states that "[e]very covenant contained in a *grant of an estate in real property*, which is made for the direct benefit of *the property*, or some part of it then in existence, runs with the land." (Italics added.) The property referenced in the phrase "which is made for the direct benefit of the property" can only be the property *granted* (i.e., *conveyed*) referenced in section 1462's opening clause because the statute does not refer to any other property. "It is . . . 'generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.'" (*Delaney v. Baker* (1999) 20 Cal.4th 23, 41.)

Thus, on its face, section 1462 applies when the covenant contained in a grant deed directly benefits the *conveyed* property. Nothing in the statute defeats its application where a covenant benefitting the conveyed property correspondingly burdens property retained by the grantor or some other property. As the Supreme Court stated in *Marra*, "[t]he decisions have interpreted [section 1462] to mean that a burdensome

9

covenant contained in a deed which in no way benefits *the property conveyed* is not binding at law upon the transferees of the grantee." (*Marra*, *supra*, 15 Cal.2d at p. 378, italics added; *Taormina Theosophical Community, Inc. v. Silver* (1983) 140 Cal.App.3d 964, 972 ["Only the benefit of a covenant runs; covenants which burden *the covenantee/grantee's land* will not bind subsequent transferees." (Italics added.)]; *Standard Oil Co. v. Slye* (1913) 164 Cal. 435, 442 [covenant in a lease to renew the lease for an additional term runs with the land under section 1462 "because obviously a covenant for a renewal of a lease is for the direct benefit of *the estate granted*" (italics added)]; *Los Angeles Terminal Land Co. v. Muir* (1902) 136 Cal. 36, 41-42 (*Muir*) [covenant did not run with the land under section 1462 because it "was not made for the benefit of the lot *conveyed*, but purported to impose a burden thereon by restricting its use" (italics added)].)

The rule that a covenant does not run under section 1462 if it burdens "the property" does not apply to the building restriction at issue in this case because the restriction burdens only the land that Fleet *retained*; it does not burden the land she *conveyed* by the deed containing the building restriction. The building restriction is a covenant running with the land under section 1462 because it is contained in a grant of real property and directly benefits the land conveyed.[5]

---

[5]    In *Oceanside Community Assn. v. Oceanside Land Co.* (1983) 147 Cal.App.3d 166 (*Oceanside*), a developer of 932 residences on individual lots recorded CC&R's restricting property it owned adjacent to the residential development to be used as a golf course. (*Id.* at p. 172.) This court decided the golf-course restriction was enforceable as a covenant running with the land under the current version of section 1468 as to some

The Selfs argue that the building restriction is not enforceable as a covenant running with the land because it does not describe the dominant tenement — i.e., the property benefitted by the restriction. Among other authority, the Selfs cite the *Citizens* court's statement that in light of the statute of frauds, for restrictions to be enforceable "there '"'should be some *written* evidence'"' indicating what property was affected by the restrictions." (*Citizens*, *supra*, 12 Cal.4th at p. 358.) The Selfs also cite *MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693 (*MacDonald*) for the proposition that a deed restriction cannot be enforced as a covenant running with the land if the deed contains no particular description of the dominant tenement to be benefitted.[6]

homeowners and as an equitable servitude as to others. (*Oceanside*, at pp. 174-175.) In light of that determination, it was unnecessary for the *Oceanside* court to address whether the restriction was also a covenant running with the land under section 1462. Nevertheless, the court opined that the restriction was not enforceable under section 1462 because although it benefited the homeowners' properties, it burdened the developer's property. (*Oceanside*, at p. 174.) The court cited *Marra*, *supra*, 15 Cal.2d 375, and *Muir*, *supra*, 136 Cal. 36, for the proposition that a covenant does not run with the land under section 1462 if it burdens property. (*Oceanside*, at p. 174.) However, both *Marra* and *Muir* involved covenants that burdened only land *conveyed* by a grant deed and not land *retained* by the grantor. Neither case supports the *Oceanside* court's apparent view that a restriction in a grant deed cannot be a covenant running with the land under section 1462 if it burdens any other property. Because the *Oceanside* court's cursory analysis of the applicability of section 1462 was unnecessary to its decision, and its cited authority does not support its conclusion on that point, we do not view *Oceanside* as persuasive authority for the proposition that a covenant in a grant of real property that directly benefits the conveyed property does not run under section 1462 if it correspondingly burdens property the grantor retains.

[6]     Although the *MacDonald* court stated that the plaintiffs in that case were "technically correct at law" in arguing that the covenant in question did not particularly describe the property benefitted by the covenant, it nevertheless decided the covenant was enforceable as an equitable servitude. (*MacDonald*, *supra*, 72 Cal.App.3d at pp. 699-701.)

11

However, the requirement addressed in *MacDonald* that the instrument containing a covenant must particularly describe the land benefitted (and the land burdened) by the covenant is a requirement under the current version of section 1468, subdivision (a); it is not a requirement under section 1462. (*MacDonald*, at p. 699.)[7]

In any event, we conclude that the 1946 grant from Fleet to the Donovans satisfies the requirement that "there '"'should be some *written* evidence'"' indicating what property was affected by the restrictions." (*Citizens*, *supra*, 12 Cal.4th at p. 358.) The 1946 grant deed specifically described the portion of Lot 4 retained by Fleet and burdened by the building restriction, and sufficiently described the portion of Lot 4 being conveyed. Although the building restriction did not specifically state that the conveyed

---

[7]     Before the current version of section 1468 was enacted, the courts in *Chandler v. Smith* (1959) 170 Cal.App.2d 118 and *Berryman v. Hotel Savoy Co.* (1911) 160 Cal. 559 decided that building restrictions imposed on the land *conveyed* in original grant deeds were not covenants running with the land *in part* because the deeds did not describe land to be benefitted by the covenants. However, these cases are inapposite. Unlike the building restriction at issue in the present case, the restrictions in *Berryman* burdened, rather than benefitted, the land of the grantee, and nothing in the deed gave notice to subsequent purchasers that the original grantor owned other property to be benefitted by the restrictions. Consequently, a subsequent purchaser was entitled to read the restrictions as not creating a covenant or servitude that would pass with the land. (*Berryman*, at pp. 564-565.) Similarly, the restrictions in *Chandler* burdened rather than benefitted the property conveyed, and it did not "appear that the restrictions . . . were inserted for the benefit of grantors' adjoining land." (*Chandler*, at p. 120.) In addition, the deed in *Chandler* expressly provided that title would not be forfeited or impaired for violation of the restrictions. Based on those facts, the *Chandler* court concluded that "the deed created a mere personal burden adhering exclusively to the original covenantor." (*Ibid.*) Unlike the deeds in *Berryman* and *Chandler*, the recorded 1946 deed in this case gives notice to subsequent purchasers of the property burdened by the building restriction (the property that Fleet retained) that Fleet conveyed adjoining property to be benefitted by the restriction.

portion of Lot 4 was the property intended to be benefitted by the building restriction, this intent is reasonably clear from the fact that the only properties referenced in the deed are the portion of Lot 4 retained and burdened by the building restriction and the portion of Lot 4 conveyed. We construe the building restriction as conferring a direct benefit on the parcel conveyed, which the Sharafis now own.

The Selfs additionally argue that the building restriction is not a covenant running with the land because the 1946 grant deed does not express a joint intention that the restriction be binding on the grantor's and grantees' successors or assigns. The Selfs cite *Oceanside* for the proposition that a baseline requirement for a restrictive covenant to run with the land is an expression in the instrument in question that the restriction will be binding on the parties' successors and assigns. However, as the *Oceanside* court noted, the requirement a "covenant must state it is binding on the assigns of the covenantor" is a requirement under the former version of section 1468. (*Oceanside*, *supra*, 147 Cal.App.3d at pp. 174-175 & fn. 4.)[8] It is not a requirement under section 1462.[9]

_____

[8]    As noted, the original version of section 1468 provided: "A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, and *which is made by the covenantor expressly for his assigns or to the assigns of the covenantee*, runs with both of such parcels of land." (Stats. 1905, ch. 450, § 1, p. 610, italics added.)

[9]    At oral argument, the Selfs argued that a covenant under section 1462 must also state it is binding on heirs and assigns (i.e., future owners) of the covenantor, citing *Citizens*, *supra*, 12 Cal.4th at pp. 353-354. However, *Citizens* does not support that argument. On page 353, the Supreme Court set forth general background information about covenants running with the land. Regarding section 1462, the court noted that before the amendments to section 1468 in 1968 and 1969, section 1462 and 1468 "were

We conclude the building restriction in the 1946 deed is a covenant running with the land under section 1462.[10]  As a statutory covenant running with the land, by operation of section 1460 the building restriction "bind[s] the assigns of the covenantor and . . . vest[s] in the assigns of the covenantee, in the same manner as if they had personally entered into them."  (§ 1460.)  Accordingly, it is enforceable against the portion of Lot 4 that the Selfs now own.  Where, as here, it appears from the record that there is only one proper judgment on undisputed facts, we may direct the trial court to enter that judgment.  (Code Civ. Proc., § 43; *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1459, fn. 7.)

---

written and interpreted very narrowly."  (*Citizens*, at p. 353.)  The *Citizens* court went on to note that "[u]nder section 1462, a [covenant] that *benefits* the property may run with the land, but not one that *burdens* the property."  (*Ibid.*)  The *Citizens* court noted that the covenants (CC&R's) at issue in that case were not enforceable as covenants under section 1462 because they burdened as well as benefitted the property conveyed.  (*Citizens*, at p. 368.)  The *Citizens* court did not address whether a covenant under section 1462 must state that it binds later owners, nor did it address that requirement in former section 1468. Regarding future owners, in its general background discussion the *Citizens* court simply noted, in accordance with section 1460, that "[a] covenant is said to run with the land if it binds not only the person who entered into it, but also later owners and assigns who did not personally enter into it."  (*Citizens*, *supra*, 12 Cal.4th at p. 353, citing § 1460 and *Scaringe v. J.C.C. Enterprises, Inc.* (1988) 205 Cal.App.3d 1536, 1543.)

[10]    In light of our conclusion that the building restriction is a covenant running with the land under section 1462, we need not consider whether it is also enforceable as an equitable servitude.

14

DISPOSITION

The judgment in favor of respondents is reversed.  The trial court is directed to enter judgment in favor of appellants on their cross-complaint and against respondents on their first amended complaint.  Appellants are awarded their costs on appeal.


_____

IRION, J.

WE CONCUR:


_____

NARES, Acting P.J.


_____

McDONALD, J.

Filed 10/11/13

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THOMAS WILLIAM SELF et al., | D061181 |
| Plaintiffs, Cross-defendants and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00101291-CU-OR-CTL) |
| SHAHRAM SHARAFI et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants, Cross-complainants and Appellants. | |

THE COURT:

The opinion filed September 20, 2013, is ordered certified for publication.


NARES, Acting P.J.

Copies to: All parties

16