331 P.2d 211]

[Civ. No. 23004. Second Dist., Div. Three. Nov. 7, 1958.]

THE CITY OF LOS ANGELES et al., Appellants, v.
MELVIN D. SAVAGE et al., Respondents.

Roger Arnebergh, City Attorney, Gilmore Tillman, Chief Assistant City Attorney and O. M. Lloyd, Deputy City Attorney, for Appellants.

Dryer, Hails, Burris & Lagerlof and H. Jess Senecal for Respondents.

VALLÉE, J.—Appeal by plaintiff from parts of a judgment declaring and determining the rights and duties of the parties under a deed conveying real property, and granting injunctive relief.

In 1924 Hilgartner Marble Company executed a grant deed to Los Angeles Gas and Electric Corporation conveying a strip of land about 100 feet wide and 200 feet long, fronting

on Bandini Boulevard in the city of Vernon. The strip conveyed was a portion of a larger parcel owned by the grantor adjoining and northerly of the property conveyed.

The deed contained first a clause describing and granting the property. Immediately following this clause and preceding an unqualified habendum clause, the deed contained a clause reading:

"This transfer is made subject to reservations and conditions as follows: The grantor hereby reserves for itself, its successors and assigns the right to lay and maintain pipes . . . under and across the land hereby conveyed . . .; *and also the right to use the surface of said land for any lawful purpose, except that no building or other structure shall be erected thereon and no use of said land made by the grantor which shall interfere or be inconsistent with the use by the grantee*; it being a further condition of this transfer . . . that no poles or towers or other structures or buildings . . . shall ever be constructed . . . by the grantee upon the land hereby conveyed, *the use of said land by the grantee to be limited to the carrying of elevated wires and cables over said land at the usual height above the surface, . . . or carrying such wires or cables under said land. . . ."* (Emphasis ours.)

Plaintiffs in 1937 succeeded to all title and rights conveyed to the original grantee; defendants in 1946 succeeded to any and all easements and rights reserved by the original grantor.

Plaintiffs, as a part of their Seal Beach-Los Angeles electrical transmission system, maintain transmission lines which cross a portion of the property. Two steel towers supporting and carrying the transmission lines are not located upon the property; the evidence showed and the trial court found that plaintiffs have access to both towers and the equipment thereon without necessity of entry upon the property.

The dispute arises out of the circumstance that defendants are and have been using the property for the placing, parking, and storing of mobile tractors, cargo trailers, and other automotive equipment, which do not contain explosives, inflammable liquids or gases, and are used by defendants in connection with a trucking transportation business conducted by them on property adjoining the property in dispute. Defendants maintain fences along three sides of the property, including a fence with a locked gate along the southerly line adjoining and fronting on Bandini Boulevard.

The evidence showed and the trial court found that for many years prior to 1946 the property had been used without

objection as a parking lot for employees of the business then conducted on the adjoining property, and that it had been fenced on three sides with a 6-foot chain link fence.

The evidence also showed and the trial court found that from October 1946, shortly after defendants acquired title to land adjoining the subject property and succeeded to any easements and rights reserved by the original grantor therein, they have maintained the fences and have placed and parked cargo trailers thereon, and have used and are using it as a storage area for mobile commercial cargo equipment; and that at no time until 1956, although plaintiffs succeeded to all title and rights of Los Angeles Gas and Electric Corporation in 1937, did plaintiffs make any objection to the use made of the property by defendants.

The judgment was: plaintiffs are the owners in fee of the property; plaintiffs "are the owners of said property in trust for the limited purposes of carrying elevated wires and cables over said land at the usual height above the surface, and carrying such wires and cables under said land . . . but without the right to erect any poles, towers, buildings or other structures other than the fences upon the said property"; and defendants are the owners of an easement over and upon the property.

It was further declared and determined that the easement is for these purposes: (a) The right to lay and maintain pipes under and across the property; (b) "The right of defendants . . . to use the surface of said land in connection with [defendants'] business . . . for any lawful purpose which does not interfere with or which is not inconsistent with the use of the surface by plaintiffs and which right includes the right to use the surface of said property . . . for the parking, placing and maintaining of mobile automotive equipment used by the [defendants] . . . which does not contain explosive or inflammable gas or liquid"; (c) "The right to use the property in dispute as a means of ingress and egress from the dominant tenement [i.e., the adjoining land owned by defendants] to and from Bandini Boulevard"; (d) "The right to maintain the present fences along the easterly and westerly lines of the property in dispute. . . ."

Plaintiffs have appealed from those parts of the judgment which are set forth within quotation marks in the two preceding paragraphs.

The judgment enjoins defendants from erecting or maintaining any fence along the southerly line of the property

except a fence not over 6 feet in height, in which there is an unlocked gate or gates, providing a space not less than 30 feet in length for ingress and egress to Bandini Boulevard.

Plaintiffs' principal contention is that the provisions of the deed purporting to reserve to the grantor "the right to use the surface of said land for any lawful purpose . . . which [does not] interfere or [is not] inconsistent with the use thereof by the grantee" is repugnant to the fee simple title conveyed by the granting clause, and is therefore void.

It is elementary that "[t]he intention of the parties to a deed is to be derived by a consideration of the instrument as a whole rather than of detached clauses, giving due regard to every provision, clause and word, whether of grant, description, qualification or explanation and viewing it in the light of the circumstances surrounding its execution. [Citations.] Every part of the instrument is to be given effect if reasonably practicable and consistent with the evident purpose of the grant, each clause helping to interpret the others." (*Biescar* v. *Czechoslovak-Patronat*, 145 Cal.App.2d 133, 143 [302 P.2d 104]; 15 Cal.Jur.2d 528, § 128.)

It is true that, where it appears from the whole conveyance that the intent was to convey an unqualified and unlimited fee, a subsequent clause setting forth limitations or reservations in irreconcilable conflict therewith and repugnant thereto has no validity. There is, however, no repugnancy between a conveyance of the fee and a reservation of an easement affecting the land conveyed (*Weller* v. *Brown*, 160 Cal. 515, 521 [117 P. 517]); and this is especially true where the reservation specifies that no use of the reserved easement shall be made "which shall interfere or be inconsistent with the use [of the land] by the grantee."

Further, a subsequent clause setting forth limitations or reservations will be given effect where it appears from the whole conveyance or from the language of the subsequent clause that the grantor intended thereby to qualify the granting clause. (*Morrison* v. *Wilson*, 30 Cal. 344; *In re Vance*, 100 Cal. 425, 428 [34 P. 1087]; 15 Cal.Jur.2d 549, § 150.)

Relying on *Marshall* v. *Standard Oil Co.*, 17 Cal.App.2d 19 [61 P.2d 520], plaintiffs urge that restrictions or limitations on the granting clause of a deed will be given effect only where the qualifying words are in the granting part of the deed, or where they are incorporated into the granting clause by specific reference thereto in that clause. In this connection, plaintiffs further urge that the qualifying words in the deed

given to their predecessor herein are not set forth, either directly or by reference, in the granting clause; but that the limitations and reservations are contained in a separate reddendum clause.

The provisions of the deed considered in the Marshall case, insofar as the question now being considered is concerned, are not distinguishable from that of the deed at bar, but the case does not help plaintiffs. The Marshall deed, in like manner to the deed here, contains first a clause describing and granting property. And in analogous manner to the deed here, there follows a clause reciting: "The purpose of this deed is to deed the herein described strip of land to the City of Huntington Beach for street purposes"; and that clause is followed by one reading: "Reserving and Providing, however, that the land herein conveyed is to be used exclusively for street purposes . . . and the grantor reserves . . . the right to use said land for water, sewer, or gas pipes. . . ." Thereafter the deed, in like manner to the deed here, contains an unqualified *habendum* clause.

The court there stated (p. 25) : "The deed under consideration, in the granting part thereof, uses language which we think clearly imparts the intention of the parties at the time of its execution. We refer to the following language contained therein: 'Reserving and provided, however, that the land herein conveyed is to be used exclusively for street purposes.' "

The Marshall case holds that clauses limiting the grant which immediately follow and are clearly connected with a preceding granting clause are a part or continuation of the granting clause. (Also see *Biescar* v. *Czechoslovak-Patronat*, 145 Cal.App.2d 133, 145 [302 P.2d 104].) There can be no doubt in the present case, whether the qualifying clauses following the introductory granting clause in the deed be regarded as a part of or continuation of the granting clause or as separate *reddendum* clauses as plaintiffs contend, that all the provisions of the deed must be considered and construed as a whole; and that, when so read, it is plain and inescapable that the grantor intended to convey the property for the purpose of carrying electrical wires or cables over or under the surface of said property, and to reserve easements as specified in the qualifying clauses.

It is clear also that the grantor here, in like manner to the grantor in Marshall, had a right to limit his grant for purposes of carrying electrical wires or cables over or under

the surface of the property being conveyed; that, since the evidence showed that the grantee was a public utility at the time of the execution of the deed, it acquired the subject property for a public use; and that the trial court was therefore entirely correct in declaring and determining that plaintiffs are the owners of the subject property in trust for the limited purposes of carrying electrical wires and cables over or under the land, but without right to erect any poles, towers, buildings, or structures other than fences upon the property. Construed as a whole, no other interpretation of the deed is reasonable.

 Plaintiffs' second contention is that the deed is unambiguous, and the trial court therefore erred in resorting to parol evidence in interpreting the language of the deed.

The deed does not with certainty spell out or specify the uses which the grantor can make of the easement in question, it being merely provided generally that the grantor reserved the right to use the surface for any lawful purpose which does not interfere and is not inconsistent with the use thereof by the grantee.

In view of the uncertainty evident on the face of the deed, evidence showing the conduct of the parties and the practical construction placed on it by them—i.e., the use by the grantor and defendants in parking and storing cars and cargo trailers on the subject land and in fencing the property without objection by the grantee or plaintiffs until 1956—afforded the most reliable means of ascertaining the intention of the parties. (*Grant* v. *Bannister*, 160 Cal. 774, 780-781 [118 P. 253] ; *Bartel* v. *Associated Dental Supply Co.*, 114 Cal.App.2d 750, 752 [251 P.2d 16] ; *Schmidt* v. *Macco Construction Co.*, 119 Cal.App.2d 717, 730 [260 P.2d 230].)

The remaining contentions of plaintiffs are variations of its main contentions and do not require discussion. The evidence fully justified the trial court in declaring that the uses being made of the surface of the property by defendants, other than the maintenance of a fence with locked gate along Bandini Boulevard, as to which injunctive relief was granted, do not and will not interfere with the use thereof by plaintiffs and are not inconsistent with its use by them.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 30, 1958.