[Civ. No. 46773. Second Dist., Div. Four. July 19, 1976.]

NORMAN R. ROUSSELOT et al., Plaintiffs and Appellants, v.
MAURY L. SPANIER, as Executor, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Flint & MacKay and Marvin Gelfand for Plaintiffs and Appellants.

Meserve, Mumper & Hughes, L. Allan Songstad, Jr., Klinger & Leevan and Tobias G. Klinger for Defendants and Respondents.

## Opinion

**FILES, P. J.**—This appeal requires an examination of the nature of the interests created by a deed executed in 1943 by the executrix of the will of Anita M. Baldwin, granting to Jack M. Sickler certain described real property "excepting and reserving" oil and gas rights, to expire in 20 years or later if production continued in paying quantities. In 1967 Sickler's successors deeded to plaintiffs the oil and gas in the same property, subject to the interest of the Baldwin successors.

Plaintiffs brought this action against Baldwin's successors, alleging that the Baldwin interest had lapsed, and praying a judgment declaring that the defendants no longer had any interest in the property.

The trial court granted defendants' motion for a summary judgment with the following explanation: "The interest received by plaintiffs' predecessors is interest in violation of the Rules against perpetuity, upon the rationale of *Victory Oil Co.* vs *Hancock Oil Co.* 125 C.A.2d 222."

The trial court then made and entered a summary judgment declaring that plaintiffs had "no estate, right, title, lien or interest in the oil, gas or other hydrocarbon substances" in or under the subject land, and quieting the defendants' title in the oil and gas against any claim to it by plaintiffs. Plaintiffs are appealing from that judgment.

The critical language of the Baldwin-Sickler deed dated September 28, 1943, is as follows: "Excepting and Reserving unto the heirs or devisees of Anita M. Baldwin, deceased, their heirs and assigns, title to all oil, gas and other hydrocarbon substances in place under, or in migration, or in transition in or under the lands above described; with the right, which is hereby expressly reserved unto them, to enter upon the property for the purpose of drilling or boring for oil or gas or other hydrocarbon substances, or for operating oil or gas wells thereon, by making a fair and just payment to the Grantees, their heirs or assigns, for such surface use; provided, however, that this exception and reservation shall lapse and expire and be of no further force or effect unless oil, gas, or other hydrocarbon substances shall have been produced in paying quantities from said premises before October first, nineteen sixty three, and unless wells drilled thereon shall continue to produce and be producing oil, gas or other hydrocarbon substances in paying quantities on said date, and, provided further that if said reservation and exception shall continue as

aforesaid beyond said date that said reservation and exception shall nevertheless lapse and expire and be of no further force or effect when and if wells drilled on said premises producing in paying quantities on said date as aforesaid shall cease to produce oil, gas and other hydrocarbon substances in paying quantities."

The oil and gas interest described above is the kind classified by our Supreme Court as a *profit a prendre,* which is an interest in real property in the nature of an incorporeal hereditament, "essentially indistinguishable from easements." (*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 877 [69 Cal.Rptr. 612, 442 P.2d 692]; see Rest., Property, § 450, com. (f).) The effect of the deed is to give the grantees a fee simple estate in the real property, subject to an incorporeal or nonpossessory interest to be enjoyed by the grantor for a determinable period.

The interest granted to Sickler was a present possessory interest. When the grantor's interest ceases because oil and gas are no longer found in paying quantities, the grantees are left with their estate free of that burden.[1] The expiration of the *profit a prendre* does not create a new estate in violation of the rule against perpetuities.[2]

The interest of the grantee was vested from the time it was created in 1943. (See former Civ. Code, § 694, repealed by Stats. 1963 ch. 1455, p. 3009.)

*Victory Oil Co.* v. *Hancock Oil Co.* (1954) 125 Cal.App.2d 222 [270 P.2d 604], involved the interpretation of a deed executed in 1922 "excepting therefrom and reserving to the grantors" oil and gas rights. That deed further provided that in the event minerals were not found within five years "all rights of said grantors in said land shall cease and terminate and the grantee and his successors in interest shall thereupon become vested with absolute title . . . ." It then provided that if minerals were found within five years, the rights of the grantors would continue for 20 years and so long thereafter as production in paying quantities continued.

---

[1] See Simes, *Perpetuities in California Since 1951* (1967) 18 Hastings L.J. 247, 263-264.

[2] ". . . A remote conditional limitation is invalid, not because the old estate ends at a remote period, but because the new estate begins at a remote period. The ceasing of one interest in possession of a corporeal hereditament is the beginning of another interest in possession,—it is a transfer of possession; but the termination of an easement is not the beginning of another easement,—the easement is not transferred; it is extinguished altogether." (Gray, The Rule Against Perpetuities (4th ed. 1942) § 279, pp. 311-312.)

The Court of Appeal held that the parties to the deed there in question had attempted to create a future estate in real property "dependent upon a dubious, uncertain future event." That interpretation was based upon the record in that case and the then existing case law, neither of which is controlling in the present case.

In discussing the nature of the grantors' retained interest, the *Victory Oil* court recognized that the earlier cases had described the interest of an oil and gas lessee as a *profit a prendre.* However, in *Dabney* v. *Edwards* (1935) 5 Cal.2d 1, 11 [53 P.2d 692, 103 A.L.R. 822], the Supreme Court had stated that oil leases created "freehold estates in the nature of a qualified or determinable fee," or "an estate in fee" if permanent. In the nomenclature of the Restatement of Property, section 9, "estate" applies only to an interest in land which is or may become possessory. In *Dallapi* v. *Campbell* (1941) 45 Cal.App.2d 541, 545 [114 P.2d 646], the court had stated, in reliance upon *Dabney,* that the execution of an oil and gas lease constitutes a conveyance of an estate in real property, which is subject to the rule against perpetuities. The *Victory Oil* opinion, citing *Dabney* and *Dallapi,* said "There is no convincing authority holding this estate in real property, unlike others, to be exempt from the rule against perpetuities." (125 Cal.App.2d at p. 233.)

It was not until *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 880-886, that the Supreme Court cleared up the confusion caused by the language used in the earlier cases. *Gerhard* reiterated that the *profit a prendre* created by an oil and gas lease is an incorporeal (*i.e.,* nonpossessory) interest, citing the Restatement of Property, section 450, which classified a *profit a prendre* as a kind of easement. *Gerhard* then explained that the terminology in the *Dabney* opinion was used only to describe the duration and not the kind of interest. In the light of this explanation, there can be no doubt now that the oil and gas interest owned by Baldwin after the grant to Sickler is a nonpossessory interest, and thus is distinguishable from the possessory interests which the Restatement calls "estates." (See Rest., Property, § 450, coms. (c) & (f).)

The other point decided in *Victory Oil*—that the future interest of the grantee was contingent—was based upon language in the deed indicating uncertainty as to whether production would ever terminate if oil or gas were found on the property. The court said: ". . . Words such as 'if,' 'in the event,' and similar others are construed to denote contingency. The instant conveyance uses the expression 'in the event' in one clause and 'if' in the other. [¶] By the foregoing tests, it appears that the Tucker

interest was not vested, but was dependent upon a dubious, uncertain future event and was therefore a contingent interest."

The deed in the case at bench is not susceptible to the interpretation given to the deed in *Victory Oil.* The deed here in question was a grant to Sickler, subject to the incorporeal hereditament which remained the property of the grantor. █ "Grants are to be interpreted in like manner with contracts in general, except so far as is otherwise provided in this article." (Civ. Code, § 1066.) This means that a court should give effect to what the parties intended by the language they used. (See *Palos Verdes Corp.* v. *Housing Authority* (1962) 202 Cal.App.2d 827, 835 [21 Cal.Rptr. 225].)

█ Nothing in the deed to Sickler discloses any doubt that oil and gas production, if it ever began, would surely terminate, so that the Sickler interest would eventually be free of the incorporeal interest.

Our decision here is supported by the decision of the Supreme Court in *Brown* v. *Terra Bella Irrigation Dist.* (1958) 51 Cal.2d 33 [330 P.2d 775]. The deed involved in that case had conveyed land, with a "reservation" of gas and oil rights for a term of 25 years and so long thereafter as production continued in paying quantities. The opinion assumes that the 25 years had passed without any production.[3] In affirming a judgment quieting the title of the grantee against the grantor's successors, the Supreme Court found it unnecessary to discuss the respective contentions of the parties concerning the rule against perpetuities. The court said; ". . . If the plaintiffs were to prevail in their contentions, we would be required for other reasons to affirm the judgment. It is obvious that if the plaintiffs' contentions are correct the grantor was, as the plaintiffs claim, possessed of a reversionary interest in the oil, gas and mineral rights to take effect in possession upon the expiration of his determinable estate after 25 years and the cessation of profitable production. The rule against perpetuities, where it is applicable, voids an attempted conveyance as of the time of the execution of the deed. (*Sheean* v. *Michel,* 6 Cal.2d 324, 328 [57 P.2d 127].) In the present case an interest in the reversion was existent in the grantor upon the execution of the deed. Such an interest is one which is alienable by the grantor. (Civ. Code, § 1111.) It was in fact transferred to the district by the same deed which, the plaintiffs claim, failed to provide a valid

[3]For a further statement of facts see the District Court of Appeal opinion, *Brown* v. *Terra Bella Irrigation District* (1958) 321 P.2d 835, 837, 840.

remainder over and thus brought the reversion into being. As hereinbefore shown the deed provides for the transfer of the grantor's real property, 'together with the . . . reversion and reversions, remainder and remainders . . . thereof.' It clearly appears from a consideration of the agreement and the deed that the grantor intended to convey all of his reversionary rights to the district and that an effective conveyance thereof was made."

Although the *Brown* opinion emphasized the language of the deed expressly transferring reversions and remainders, the absence of such language in the present deed is of no consequence. The deed involved here was a grant, which presumptively conveys a fee simple title unless it appears that a lesser estate was intended. (Civ. Code, § 1105.) It also conveys any subsequently acquired title. (Civ. Code, § 1106.) Thus the substance and effect of the *Brown* decision is that a grant such as that in the present case does not violate the rule against perpetuities.[4]

The judgment is reversed.

Kingsley, J., and Jefferson (Bernard), J., concurred.

---

[4]See Simes, *Perpetuities in California Since 1951*, 18 Hastings L.J. 247, 264; Maxwell, discussion note following *Brown* v. *Terra Bella Irrigation Dist.,* 9 Oil & Gas Reporter 1010; 2 Williams & Meyers, Oil and Gas Law, section 335.